IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANA KINCAID, *individually and on behalf of similarly situated persons*,

    Plaintiff,

        v.

PASHA ATLANTA, LLC, d/b/a Pasha Restaurant and Bar, et al.,

    Defendants.

CIVIL ACTION FILE
NO. 1:23-CV-3592-TWT

## OPINION AND ORDER

This is a FLSA minimum wage case. It is before the Court on Plaintiff Jana Kincaid's Motion for Partial Summary Judgment [Doc. 56], Defendant Okan Ozyurteri's Motion for Summary Judgment [Doc. 57], Defendant Goun Hanna's Motion for Summary Judgment [Doc. 58], and Kincaid's Motion to Strike Ozyurteri's Affidavit [Doc. 61]. Plaintiff Kincaid's Motion for Partial Summary Judgment [Doc. 56] is GRANTED in part and DENIED in part. Defendant Ozyurteri's Motion for Summary Judgment [Doc. 57] is DENIED. The Court DENIES Defendant Hanna's Motion for Summary Judgment [Doc. 58] but orders the Plaintiffs to properly serve Defendant Hanna. Plaintiff Kincaid's Motion to Strike Ozyurteri's Affidavit [Doc. 61] is DENIED.

## I.    Background[1]

This case arises from a dispute under the Fair Labor Standards Act

---

[1] The operative facts on the summary judgment motions are taken from the parties' Statements of Undisputed Material Facts and the responses

("FLSA") between Plaintiff Jana Kincaid, acting on behalf of herself and other similarly situated individuals, and Defendants Pasha Atlanta, LLC ("Pasha"), Okan Ozyurteri, and Goun Hanna. Ozyurteri and Hanna are the owners of Pasha, which is a restaurant and bar in Atlanta, Georgia. (Pls.' Statement of Undisputed Material Facts ¶ 5 [Doc. 56-2]). Kincaid was employed as a server at Pasha from approximately January 2021 to March 2023. (Def. Pasha's Resp. to Pls.' Statement of Undisputed Material Facts ¶ 4 [Doc. 62-1]; Kincaid Dep. at 18:19–22, 21:11–13 [Doc. 49-1]). She alleges that the Defendants violated the FLSA by illegally retaining the tips of Pasha's servers and failing to properly notify their servers of their intent to use a "tip credit" under 29 U.S.C. § 203(m). (Compl. ¶¶ 6–7). The proposed class includes "[a]ll servers who worked for Defendants at any time during the three-year period" prior to the Complaint's filing. (*Id.* ¶ 42). The relevant facts are as follows.

According to the Plaintiffs, the Defendants required servers to share the tips they earned each shift with management—a "tip out" process—to pay for the hourly wages of other employees and pay for Pasha's other business expenses. (Pls.' Statement of Undisputed Material Facts ¶¶ 35–38). The required tip out was initially 4% of total net sales and then later increased to 8%. (*Id.* ¶¶ 35–36). Of the 8% tip out, bartenders supposedly received 2%, and

---

thereto. The Court will deem the parties' factual assertions, where supported by evidentiary citations, admitted unless the respondent makes a proper objection under Local Rule 56.1(B).

back-of-house employees such as "food runner[s], bussers, hookah guys, and dishwashers" supposedly received the remaining 6%. (*Id.* ¶ 37). The bartenders received their 2% tip out each night, while the remaining 6% was deposited into Pasha's sole bank account supposedly to be distributed to back-of-house staff. (*Id.* ¶ 37; Hanna Dep. at 80:4–22, 81:1–6 [Doc. 53-1] (regarding the bartenders' receiving their 2% portion each night)). Pasha admits that it distributed the remaining 6% of funds to its back-of-house staff as part of the staff's "regular hourly pay" (rather than as a tip in addition to their wages). (Pls.' Statement of Undisputed Material Facts ¶ 38; Def. Pasha's Resp. to Pls.' Statement of Facts ¶ 38). In addition to paying the standard 8% tip out, the Plaintiffs also allege that they were required to pay for Pasha's various business expenses, including (1) bills for customers who walked out of the restaurant without paying, (Pls.' Statement of Undisputed Material Facts ¶¶ 45–48); (2) broken credit card machines, (*id.* ¶¶ 49–51; Br. in Supp. of Pls.' Mot. for Partial Summ. J., Ex. C, at 1 [Doc. 56-5]); (3) menu items that customers sent back or did not like, (Pls.' Statement of Undisputed Material Facts ¶¶ 52–54); and (4) bills that were subject to chargebacks where "a customer provides the wrong card in which the vendor does not accept payment," (*id.* ¶ 55). The Defendants dispute various parts of these allegations such as the frequency of these payouts, as discussed further below. (Def. Pasha's Resp. to Pls.' Statement of Facts ¶¶ 45–55).

3

The Plaintiffs additionally allege that the Defendants did not notify their servers of their intent to take a "tip credit." (*Id.* ¶ 21). Under the FLSA, an employer that takes a tip credit may pay a tipped employee less than the federal minimum wage if the employee's combined wages and tips meet the federal minimum. 29 U.S.C. § 203(m)(2)(A). But an employer can only take a tip credit if it first notifies its employees of its intent to take such a tip credit. *Id.* In other words, an employer that does not meet all the requirements for taking a tip credit must pay its employees at least the full federal minimum wage ($7.25) and will otherwise be in violation of the FLSA's minimum wage requirements. The Defendants admit that Hanna, Ozyurteri, and their general manager "did not know the term 'tip credit,'" (Def. Pasha's Resp. to Pls.' Statement of Facts ¶¶ 26–28). The Plaintiffs rely on the Defendants' lack of knowledge to argue that the Defendants did not notify their servers about their intent to take a tip credit. (*See* Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 11–13). The Defendants point to further testimony indicating that notice of the tip credit was still given—even if not by name. (Def. Pasha's Resp. to Pls.' Statement of Facts ¶ 29).

Now, before the Court are three motions for summary judgment—one by Plaintiff Kincaid, one by Defendant Ozyurteri, and one by Defendant Hanna—and one motion to strike by Kincaid. Kincaid, on behalf of herself and the putative class members, moves for partial summary judgment on five

4

issues: (1) Pasha's qualification as an "enterprise" under the FLSA;
(2) Ozyurteri's and Hanna's qualifications as "employers" under the FLSA;
(3) Defendants' failure to notify servers of their intent to use a tip credit under
29 U.S.C. § 203(m); (4) Defendants' retention of server tips to pay Pasha's staff
and its other business expenses between November 2019 and July 2021[2];
(5) the Defendants' lack of "good faith" as to the FLSA's liquidated damages
provision and their "willful" conduct regarding the FLSA's three-year statute
of limitations. (Pls.' Mot. for Partial Summ. J., at 1–2 [Doc. 56]). Ozyurteri and
Hanna each argue that they are improper parties in their respective motions
for summary judgment [Docs. 57–58]. Ozyurteri contends that he does not

---

[2] The relevant time period of this third issue was not abundantly clear
to the Court from Kincaid's summary judgment motion. As such, the Court
clarifies that it construes her motion as requesting summary judgment on the
third issue with respect to only the period between November 2019 (when
Pasha opened) and July 2021. (*See* Reply Br. in Supp. of Pls.' Mot. for Partial
Summ. J., at 9 n.2). In July 2021, the Defendants implemented as standard
practice a 20% automatic gratuity charge on all customer bills. (Pls.' Statement
of Undisputed Material Facts ¶¶ 56; Def. Pasha's Resp. to Pls.' Statement of
Facts ¶¶ 56). The parties appear to dispute whether the automatic gratuity
constitutes a tip for servers and the relevance of instances in which a manager
may have removed the automatic gratuity for particular customers. (*See* Def.
Pasha's Resp. in Opp'n to Pls.' Mot. for Partial Summ. J., at 5; Reply Br. in
Supp. of Pls.' Mot. for Partial Summ. J., at 4–6). Prior to this change, Pasha's
standard practice was to allow customers to choose their own tip amount. (Pls.'
Statement of Undisputed Material Facts ¶¶ 56–57; Def. Pasha's Resp. to Pls.'
Statement of Facts ¶¶ 56–57). The Court notes, however, that there is some
dispute over whether certain tables, such as tables of five or more or tables
receiving bottle service, were charged an automatic gratuity prior to July 2021.
(Pls.' Statement of Undisputed Material Facts ¶ 34, *with* Def. Pasha's Resp. to
Pls.' Statement of Facts ¶ 34; Defs.' Statement of Additional Material Facts
¶ 6).

qualify as an "employer" under the FLSA, (*see generally* Def. Ozyurteri's Br. in Supp. of Mot. for Summ. J. [Doc. 57]), and Hanna contends that he was not properly served with process, (*see generally* Def. Hanna's Br. in Supp. of Mot. for Summ. J. [Doc. 58]). In addition to the three summary judgment motions, Kincaid also moves to strike portions of Ozyurteri's affidavit, [Doc. 13-1], which he relies on in support of his summary judgment motion. Kincaid argues that portions of the affidavit averring that Ozyurteri was not involved in Pasha's day-to-day operations are a "sham" and blatantly contradict Ozyurteri's prior deposition testimony. (Pls.' Mot. to Strike, at 2 [Doc. 61]). Kincaid therefore seeks to strike certain paragraphs of that affidavit or alternatively requests a jury to "decide . . . which version of the facts is more credible." (*Id.* at 4, 9).

## II.   Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Under Rule 12(f), a party may move to strike all or a portion of a "pleading" that contains "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Kincaid presently moves to strike portions of an affidavit, but an affidavit is not a pleading as defined by Rule 7(a) and as required by Rule 12(f). Fed. R. Civ. P. 7(a). As a result, the Court will construe Kincaid's motion to strike portions of the affidavit as a motion to exclude those portions from evidence.

### III.    Discussion

### A. Motion to Exclude

Kincaid seeks to exclude paragraphs 3–8 of Ozyurteri's affidavit under the "sham affidavit" rule. (*See* Pls.' Mot. to Strike, at 3). Under this rule, "a court may disregard an affidavit as a matter of law when it determines that the affidavit is a sham." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (citation omitted). An affidavit is a sham "when a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact . . . [and that party attempts] thereafter [to] create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Id.* at 954 (alterations in original) (citing *Van T. Junkins & Assocs., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984)). As the

7

Eleventh Circuit has explained, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Id.* at 953 (citation omitted). That being said, the sham affidavit rule should be used "sparingly because of the harsh effect it may have on a party's case." *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1307 (11th Cir. 2016) (quoting *Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1316 (11th Cir. 2007)). This heightened requirement makes sense because "allow[ing] every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity" to assess a witness's credibility and the weight of the evidence. *Tippens*, 805 F.2d at 953–54.

The Court concludes that paragraphs 3–8 of the affidavit do not so directly contradict Ozyurteri's deposition testimony as to require rendering them a sham and excluding them from evidence. As an initial matter, there do appear to be certain discrepancies between Ozyurteri's affidavit and his deposition. For example, Ozyurteri broadly states in paragraph 6 of his affidavit that he "[did] not exercise[ ] any control over decisions related to the management, operations, policies, or procedures of Pasha." (Ozyurteri Aff. ¶ 6 [Doc. 13-1]). But Ozyurteri's responses in his deposition seem to contradict this

statement, including Ozyurteri's statements that he was involved in hiring Pasha's general manager, retaining ADP Payroll and AMGD CPA for payroll and accounting services, setting servers' minimum wages at $2.13, and setting their initial tip out percentage to 4%. (Ozyurteri Dep. at 20:14–21:20, 38:20–39:5, 24:17–25:24, 22:14–23:5, 31:17–32:13, [Doc. 55-1]). Apart from this broadly worded paragraph, however, Ozyurteri's affidavit does not seem to contradict his deposition so clearly as the Plaintiffs contend. In paragraph 3 of the affidavit, Ozyurteri states that he "[did] not ha[ve] any operational control of the day-to-day operations of Pasha." (Ozyurteri Aff. ¶ 3). The Plaintiffs contend that Ozyurteri's depositions answers clearly establish the opposite, (Pls.' Mot. to Strike, at 4–5), but whether the activities mentioned in his deposition specifically amount to day-to-day operational control appears to be an outstanding factual question. In paragraph 4, the affidavit asserts that Ozyurteri did not hire "any employees." (Ozyurteri Aff. ¶ 4). The Plaintiffs appear to contend that this statement is false because Ozyurteri previously stated that he was involved in hiring Pasha's general manager. (Pls.' Mot. to Strike, at 6). But paragraph 8 of the affidavit seems to further clarify (at least implicitly) that Ozyurteri was not involved in hiring employees other than managers, who were "delegated" the task of hiring other employees. (Ozyurteri Aff. ¶ 8). Moreover, Ozyurteri's Statement of Material Facts in support of his summary judgment motion acknowledges that Ozyurteri hired a general

manager. (Def. Ozyurteri's Statement of Material Facts ¶ 5 [Doc. 57-2]). Similar distinctions could plausibly be applied to other paragraphs (e.g., perhaps an individual did not "handle[ ] or participate[ ]" in "payroll" or "compensation payment," (*see* Ozyurteri Aff. ¶ 5), if a firm was hired to handle these tasks).

Given all of the above, the Court concludes that Ozyurteri's affidavit is not a sham under the sham affidavit rule but rather contains mere variation in witness testimony. *See In Re Stand 'N Seal*, 623 F. Supp. 2d 1355, 1361 (N.D.Ga. 2009) (quoting *Tippens*, 805 F.2d at 953). Such variation should be assessed by a trier of fact who can assess witness credibility and the weight of the evidence. *See id.* "Any conflict or discrepancy between the two documents can be brought out at trial and considered by the trier of fact." *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). Therefore, Kincaid's motion to exclude portions of Ozyurteri's affidavit is denied.

## B. Motions for Summary Judgment

### 1. Defendant Hanna's Motion

Hanna argues that he was not properly served process and that the Court should thus dismiss him as a party to the suit. Under Rule 4(m), "[i]f a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time," assuming the plaintiff cannot

"show good cause for the failure." Fed. R. Civ. P. 4(m). In December 2023, Hanna's Answer [Doc. 24] raised the defense of "lack of service, improper service, and insufficient service of process" as well as "laches in conjunction with F.R.C.P. 4m." (Def. Hanna's Answer, at 2 [Doc. 24]). According to Hanna, the Plaintiffs have failed to perfect service in the time since he filed his Answer, and the ninety-day window has now elapsed. (Br. in Supp. of Def. Hanna's Mot. for Summ. J., at 3–4). In his motion, Hanna points out that the Plaintiffs' process server attempted substituted service via his mother at an address where his mother resides but where he "ha[s] not resided . . . in decades." (*Id.* at 3; Def. Hanna's Statement of Material Facts ¶¶ 1–2 [Doc. 58-2]). He additionally alleges in an affidavit that his mother does not speak English, (Def. Hanna's Statement of Material Facts ¶ 4), suggesting that the substituted service would not have been proper even if he did reside with his mother.

In response, the Plaintiffs argue that Hanna waived the defense of lack of service of process by "continu[ing] through the normal course of litigation," including by "consent[ing] to (three) joint motions to extend discovery, respond[ing] to discovery requests served by Plaintiffs, and willingly participat[ing] in a deposition in which Plaintiffs questioned him *as an individual defendant*." (Pls.' Resp. Br. in Opp'n to Def. Hanna's Mot. for Summ. J., at 4–5 [Doc. 60]). The Plaintiffs also assert that service of process was

perfected by serving Hanna's mother because their process server signed an affidavit affirming that Hanna co-resides with his mother. (*Id.* at 6).

Ultimately, in light of Hanna's Answer and affidavit and out of an abundance of caution, the Court finds the Plaintiffs' attempted service on Hanna in December 2023 insufficient. [*See* Doc. 23]. However, the Court finds it appropriate to exercise its discretion under Rule 4(m) to extend the time for the Plaintiffs to serve Hanna with process. While "[a] defendant's actual notice is not sufficient to cure defectively executed service," *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007), a finding that a defendant had actual notice of the suit may warrant an extension of time for service of process under Rule 4(m), *see Prince Hotel, S.A. v. Blake Marine Grp.*, 858 F. Supp. 2d 1287, 1293 (S.D. Ala. 2012); *Allen v. Gwinnett Cnty. Sch. Dist.*, 2019 WL 1147126, at *6 (N.D. Ga. Jan. 7, 2019), *report and recommendation adopted*, 2019 WL 1178428, at 1* (N.D. Ga. Jan. 30, 2019); *Woods v. Gwinnett Cnty. Sch. Dist.*, 2023 WL 11980463, at *4 (N.D. Ga. Aug. 17, 2023). Here, it appears that Hanna "learned of the existence of this lawsuit promptly" and has thus far participated consistently throughout the litigation "such that [he] cannot claim any unfair surprise by the delay in service." *See Prince Hotel*, 858 F. Supp. 2d at 1293. Moreover, it appears that Hanna has not identified any prejudice that has occurred or would occur from the delayed service. Therefore, the Court directs the Plaintiffs to, within fourteen days of the date of this Order, file proof

of proper service or show cause as to why service cannot be effectuated within this period. Failure to file proof of service or show cause will result in the dismissal Defendant Hanna from this action.

### 2. Defendant Ozyurteri's Motion

Under the FLSA, employees are entitled to minimum wage and overtime protections from qualifying employers. 29 U.S.C. §§ 206(a)(1), 207(a)(1). An "employee" is "any individual employed by an employer," *id.* § 203(e)(1), and a qualifying "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee," *id.* § 203(d). To qualify as an employer under this test, a corporate officer—which Ozyurteri is by virtue of being an owner of Pasha—"must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee." *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1313 (11th Cir. 2013) (quoting *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1160 (11th Cir. 2008)). With this background in mind, the Court additionally notes that the Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches consistent with congressional direction." *Tony & Susan Alamo Found.*, 471 U.S. 290, 296 (1985) (quoting *Mitchell v. Lublin, McGaughy & Assocs.*, 358 U.S. 207, 211 (1959)).

In his motion for summary judgment, Defendant Ozyurteri argues that he cannot be held individually liable under the FLSA because he does not

control Pasha's day-to-day operations and thus does not qualify as an "employer." (Def. Ozyurteri's Br. in Supp. of Mot. for Summ. J., at 3 [Doc. 57-1]). He asserts, among other things, that he has not (1) supervised or hired any employees, (2) "handled or participated in payroll, accounting, bookkeeping, or any matters involving compensation structure, compensation payment, insurance coverage, or employment benefits for Pasha employees," (3) "exercised any control over decisions related to the management, operations, policies, or procedures of Pasha," or (4) "participated in any operational functions of the business." (*Id.* at 4–5). Ozyurteri further asserts that no named Plaintiffs have "testified that they were interviewed, trained, disciplined, or managed" by him. (*Id.* at 5).

In response, the Plaintiffs point to deposition testimony from various individuals to demonstrate that Ozyurteri did possess day-to-day operational control. This testimony includes Ozyurteri's own statements that he and Hanna determined the hourly wages of the servers, the 4% mandatory tip out percentage, what payroll systems to use, and which employees to hire upon the restaurant's initial opening. (*See* Pls.' Resp. Br. in Opp'n to Def. Ozyurteri's Mot. for Summ. J., at 5–8). The Plaintiffs also point to testimony from Hanna stating that he and Ozyurteri jointly decided to institute an automatic gratuity for the servers, require current employes to sign an arbitration agreement, and increase the tip out percentage to 8%. (*See* Pls.' Resp. Br. in Opp'n to Def.

14

Ozyurteri's Mot. for Summ. J*., at* 7–8; Pls.' Statement of Additional Material Facts in Opp'n of Def. Ozyurteri's Mot. for Summ. J. ¶¶ 6, 14 [Doc. 59-2]). Pasha's general manger also testified that Ozyurteri and Hanna had previously brought in some servers as potential new hires and generally had the ability to change the restaurant's employment policies at any time. (Pls.' Resp. Br. in Opp'n to Def. Ozyurteri's Mot. for Summ. J*., at* 8–9).

In light of the above, the Court readily concludes that a genuine issue of material fact exists regarding whether Ozyurteri qualifies as an employer under the FLSA. The Plaintiffs and Defendants have presented competing versions of Ozyurteri's involvement. (*See generally, e.g.*, Pls.' Resps. to Def. Ozyurteri's Statement of Undisputed Material Facts [Doc. 59-1]). Assessing whether Ozyurteri's involvement arises to day-to-day operational control is thus a task apt for a jury, which can assess each witness's credibility and the weight of the evidence. Accordingly, the Court denies Ozyurteri's motion for summary judgment.

### 3. Plaintiff Kincaid's Motion

As previously stated, Kincaid seeks partial summary judgment on the following five issues: (1) Pasha's qualification as an "enterprise" under the FLSA; (2) Ozyurteri's and Hanna's qualifications as "employers" under the FLSA; (3) Defendants' failure to notify servers of their intent to use a tip credit under 29 U.S.C. § 203(m); (4) Defendants' retention of server tips to pay

Pasha's staff and its other business expenses between November 2019 and July 2021; and (5) the Defendants' lack of "good faith" as to the FLSA's liquidated damages provision and their "willful" conduct regarding the FLSA's three-year statute of limitations. (Pls.' Mot. for Partial Summ. J., at 1–2). The Court walks through each issue in turn.

Both parties agree on the first issue: Pasha qualifies as an "enterprise" under the FLSA and is thus required to provide minimum wage protections to its employees. (Pls.' Statement of Undisputed Material Facts ¶¶ 1–3; Def. Pasha's Resp to Pls.' Statement of Facts ¶¶ 1–3; *see also* Hanna Dep. at 24:2–8 (testifying that Pasha's annual revenues exceed $500,000)). Therefore, the Court grants the Plaintiffs' Motion for Partial Summary Judgment on this issue.

The second issue is whether Defendants Ozyurteri and Hanna may be held individually liable as "employers" under the FLSA. Regarding Ozyurteri, the Court has already explained above that there is a genuine dispute of material fact as to whether he qualifies as an "employer." Regarding Hanna, however, no genuine dispute of material fact exists. Neither Pasha nor Hanna disputes the fact that Hanna controlled Pasha's day-to-day operations, and the Plaintiffs have offered evidence of Hanna's involvement that goes well beyond Ozyurteri's involvement. For example, Ozyurteri testified that he and Hanna agreed that Hanna would be "more involved in the day-to-day business" and

be the "operational guy." (Ozyurteri Dep. at 23:12–24). Moreover, in addition to making certain decisions about the business alongside Ozyurteri, Hanna directly "managed the managers" at Pasha, "ha[d] the authority to fire employees and has fired employees," and instituted the policy of charging servers for broken credit card machines, among other things. (Pls.' Statement of Undisputed Material Facts ¶¶ 7, 11, Hanna Dep. at 67:9–68:7). Given all of the above, the Plaintiffs' Motion for Partial Summary Judgment is granted with respect to Hanna's qualification as an "employer" under the FLSA but denied as to Ozyurteri's qualification as an "employer" under the FLSA.

Third, as to the notice of the tip credit issue, the Court is satisfied that there is a genuine issue of material fact. The Court agrees with Pasha that the question of whether the restaurant provided notice is "highly disputed." (Def. Pasha's Resp. Br. in Opp'n to Pls.' Mot. for Partial Summ. J., at 3). The Plaintiffs cite deposition testimony from Ozyurteri, Hanna, and Pasha's general manager to show that they were not aware of the term "tip credit" and did not provide notice to servers that a tip credit was being utilized. (*See* Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 11–12). Although these three individuals clearly did not understand the term "tip credit," there is some testimony that suggests—when construed in the light most favorable to Pasha—that the servers may have received some form of tip credit notice. For example, Ozyurteri also replied "[y]es" when asked, "Did you explain the tip

credit notice [when you were involved in the first hiring of servers]?" (Ozyurteri Dep. at 30:10–18). Ozyurteri also testified that Pasha's hiring process included explaining to the servers that "they w[ould] be making 2.13 an hour plus . . . tip money," (*Id.* at 31:1–11), and Pasha's general manager testified that she "explain[ed] how the pay was to work for servers" on their "first day,"[3] (Tetik Dep. at 26:16–22 [Doc. 54-1]). The Plaintiffs point to district court cases that suggest the Defendants' communications were insufficient to provide notice of a tip credit as a matter of law, (*see, e.g.*, Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 14), but the Court is of the opinion that at the heart of this notice issue is a genuine factual dispute. The Defendants' testimony certainly lacks specificity, but it does leave open factual questions about what information was shared with the Plaintiffs, the extent to which the Plaintiffs were informed, if at all, of the Defendants' intent to use a tip credit, and which witnesses are credible to speak about this information. Therefore, the Court denies summary judgment on the issue of the tip credit notice. *See Howard v. Second Chance Jai Alai LLC*, 2016 WL 3349022, at *5 (M.D. Fla. June 16, 2016) ("[T]he evidence regarding what notice was given . . . is vague and inconclusive. . . . [I]t is unclear what details were explained to Plaintiffs . . . . Thus, summary judgment is not appropriate."); *Nail v. Shipp*, 2019 WL 3719397, at *7 (S.D.

---

[3] As the Plaintiffs point out, the general manager also testified that she did not remember the content of her interview and/or onboarding conversations with servers. (*See* Reply Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 2).

Ala. Aug. 6, 2019).

Fourth, the Plaintiffs move for summary judgment regarding the Defendants' alleged retention of their servers' tips for Pasha's business expenses between November 2019 and July 2021. The FLSA prohibits employers from "keep[ing] tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." 29 U.S.C. § 203(m)(2)(B). The Court finds it undisputed that, up until Pasha instituted an automatic gratuity on all customer bills in July 2021, the restaurant used a portion of the Plaintiffs' tips to pay the hourly wages of its employees and pay other business expenses related to customer walkouts, voided menu items, and repairs for broken credit card machines.[4] Pasha admits that 6% of the 8% tip out was deposited directly into the restaurant's bank account and used to pay the hourly wages of its "food runner[s], bussers, hookah guys, and dishwasher[s]." (Pls.' Statement of Undisputed Material Facts ¶ 38; Def. Pasha's Resp. to Pls.' Statement of Facts ¶ 38). Further, it is undisputed that

---

[4] Regarding chargebacks, the Plaintiffs do not point to—and the Court is not aware of—any evidence that shows a server had actually surrendered tips to cover a chargeback, even if Defendants had established a policy of doing so. (*See* Def. Pasha's Resp. to Pls.' Statement of Facts ¶ 55). In their Statement of Undisputed Material Facts, the Plaintiffs merely cite a deposition in which Hanna states they created a policy of making servers pay for chargebacks and an exhibit [Doc. 56-9] showing the policy was announced. (*See* Pls.' Statement of Undisputed Material Facts ¶ 55).

certain Plaintiffs were required on one or more occasions to pay management for customer walkouts, (*see* Def. Pasha's Resp. to Pls.' Statement of Facts ¶¶ 45–48), voided menu items (*id.* ¶¶ 52–53), and repairs for broken credit card machines, (*see id.* ¶¶ 49–51). Pasha appears to dispute only the frequency of these practices—i.e., whether they happened more than once, (*see id.* ¶¶ 45–46, 48, 51)—and does not otherwise provide any affirmative evidence to suggest that Plaintiffs' tips were not used for these expenses. For these reasons, there is no genuine dispute of material fact that Pasha had a practice of retaining its servers' tips to pay the hourly wages of its staff and other business expenses in the period between Pasha's opening in November 2019 and the establishment of its automatic gratuity policy in July 2021. Therefore, the Court grants summary judgment for the Plaintiffs on this issue.

Fifth, as to the liquidated damages and the statute of limitations issue, the Court denies summary judgment. An employer who violates the FLSA's minimum wage requirements is liable for "the payment of wages lost and an additional equal amount as liquidated damages" (double damages), 29 U.S.C. § 216(b), unless the employer can demonstrate it acted in "good faith" and on "reasonable grounds for believing that [the] act or omission was not a violation of the Fair Labor Standards Act," *id.* § 260. Additionally, the FLSA has a two-year statute of limitations for non-willful violations and a three-year statute of limitations for willful violations. 29 U.S.C. § 255(a). As far as the

20

Court can tell, the Plaintiffs' request a finding that the Defendants' failure to pay minimum wage was not done in "good faith"[5] and was instead "willful." (*See* Br. in Supp. of Pls.' Mot. for Partial Summ. J., at 20). However, because the Court denied summary judgment as to whether the Defendants provided notice of a tip credit (the third issue), it is not yet clear whether the Defendants were required to pay the full minimum wage of $7.25 or only $2.13 (in conjunction with a valid tip credit). And, although the Plaintiffs have presented some evidence that they did not receive even $2.13 at times and $7.25 with tips at others, the Plaintiffs do not argue this issue in their briefing. (*See, e.g.*, Araujo Dep. 20:7–19; Araujo Dep. 20:7–19, 59:8–60:2 [Doc. 51-1]. (*But see* Def. Pasha's Resp. to Pls.' State of Facts ¶¶ 32–33) (denying these facts)). Therefore, as the Plaintiffs have not yet established that the Defendants violated the FLSA's minimum wage requirements, summary judgment on whether those alleged violations were done willfully or without "good faith" must be denied.

### IV.    Conclusion

For the foregoing reasons, Plaintiff Kincaid's Motion to Strike Ozyurteri's Affidavit [Doc. 61] is DENIED. Plaintiff Jana Kincaid's Motion for

---

[5] The FLSA seems to provide for liquidated damages for violations of § 203(m)(2)(B) regarding the illegal retention of tips by managers or supervisors, *see* 29 U.S.C. § 216(b), but the Court construes the Plaintiffs' briefing as requesting a ruling on liquidated damages only for "fail[ure] to pay proper minimum wages," (*see* Br. in Supp. of Pls.' Mot. for Partial Summ., J., at 20).

Partial Summary Judgment [Doc. 56] is GRANTED in part and DENIED in part. It is granted as to the issues of: (1) Defendant Pasha's "enterprise" liability under the FLSA; (2) Defendant Goun Hanna's qualification as an "employer" under the FLSA; and (3) the Defendants' retention of server tips to pay for the restaurant's business expenses between November 2019 and July 2019. It is denied as to the issues of: (1) Defendant Ozyurteri's qualification as an "employer" under the FLSA the Defendants' failure to notify servers of a tip credit; and (2) the Defendants' lack of "good faith" as to the liquidated damages provision and their willful conduct as to the three-year statute of limitations. Defendant Ozyurteri's Motion for Summary Judgment [Doc. 57] is DENIED. Defendant Hanna's Motion for Summary Judgment [Doc. 58] is also DENIED, but the Plaintiffs are DIRECTED to either file proof of proper service on Defendant Hanna or show cause as to why service cannot be effectuated within fourteen days of the date of this Order.

SO ORDERED, this ____14th____ day of January, 2025.


THOMAS W. THRASH, JR.
United States District Judge

22